IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SANDRA TINKER,

      Plaintiff,

    v.

VERSATA, INC. GROUP DISABILITY
INCOME INSURANCE PLAN, and
CONTINENTAL CASUALTY COMPANY,

      Defendants.

_____/

No. Civ. 2:06-CV-02906 JAM KJM

<u>ORDER GRANTING PLAINTIFF'S
MOTION FOR JUDGMENT</u>

    Plaintiff Sandra Tinker ("Tinker") brought this action against Versata, Inc. Group Disability Income Insurance Plan ("Versata") and Continental Casualty Company ("Continental") (collectively "Defendants") pursuant to the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.* ("ERISA") seeking judicial review of Continental's denial of long-term disability benefits under her employer's ERISA-based plan.  The parties filed cross-motions for judgment pursuant to Rule 52 of the Federal Rules of Civil Procedure.  For the reasons set forth

1

below, Tinker's motion is GRANTED and Defendants' motion is DENIED.

## I.  FACTUAL BACKGROUND

On February 6, 1996, Tinker began working for Versata as a lead technical writer.  Administrative Record ("AR") 228.  As an employee of Versata, Tinker was a member of a long-term disability ("Plan") insured by Continental.  AR 206, 228.  The Plan defines "Disability" as satisfying the "Occupational Qualifier."  Steven M. Chabre ("Chabre") Decl., Exh. C at 5.[1]  The Occupational Qualifier provides in relevant part:

> "*Disability*" means that during the *Elimination Period* and the following 24 months, *Injury or Sickness* causes physical or mental impairment to such a degree of severity that You are:
> 1. continuously unable to perform the *Material and Substantial Duties* of *Your Regular Occupation*; and
> 2. not working for wages in any occupation for which *You* are or become qualified by education, training or experience.

Chabre Decl., Exh. C at 5 (italics in original).  The Plan further provides that benefits may be terminated if a beneficiary, among other things, fails to provide objective medical findings supporting her disability.  Chabre Decl., Exh. C at 12.  Finally, the Plan provides that a beneficiary may

_____

[1] In deciding this motion, the Court will refer to the language in the "Amendment Rider #1" ("rider") to the Plan since it contains the relevant language in effect at the time Tinker's benefits were denied.  Chabre Decl., Exh. C.  While the parties do not dispute this fact, neither has offered an explanation as to why the rider is not in the administrative record.

appeal any denial of a claim for benefits by filing a written request for a full and fair review to the insurance company within 180 days after receipt of the written notice of denial of the claim.  Chabre Decl., Exh. C at 17-18.

On June 26, 2001, Tinker stopped working for Versata.  AR 228.  On July 27, Tinker was diagnosed with depression and Meniere's disease, a disorder of the inner ear, which in Tinker's case caused, among other things, severe vertigo attacks.  AR 133, 149, 176, 185.  On or around August 3, 2001, Tinker submitted a claim for disability benefits.  AR 228.  On September 27, 2001 Tinker's claim for short-term disability benefits was approved, effective July 4, 2001 to August 28, 2001.  AR 206.  On October 9, 2001, Tinker's claim for long-term benefits was approved, effective August 28, 2001.  AR 201.  On April 21, 2003, Tinker's attending physician, Dr. Jennifer Derebery ("Derebery"), wrote a letter to Continental, based on a February 12, 2003 appointment, stating that Tinker's vertigo attacks had decreased in frequency from daily attacks to one attack every three weeks.  AR 116.  Dr. Derebery also noted that the severity of the attacks had decreased, and that Tinker described the attacks as being less severe than in the past.  AR 116.  Dr. Derebery's February 12, 2003 chart notes, however, indicate that Tinker was suffering from severe attacks once

every 3-4 weeks and moderate attacks 1-2 times per week related to stress or cheating on diet.  AR 94.

On June 5, 2003, Continental informed Tinker that her disability benefits were terminated as of May 31, 2003 and that no further benefits would be issued beyond June 30, 2003.  AR 106-107.  The termination of benefits letter referenced the definition of "Disability" as set forth in the Plan and explained that Tinker was no longer entitled to benefits because she no longer met the Plan's definition of "Disability" since Dr. Derebery reported that she was capable of returning to work, full duty without restrictions.  AR 106.  This determination was based on Dr. Derebery's affirmative response to the following Functional Assessment Tool: "Do you feel your patient is currently capable of performing work at this time which would afford her the opportunity to sit or stand as needed, the ability to operate a computer, telephone, fax machine, and the ability to practice analytic thinking skills?"  AR 106, 115. The termination letter advised Tinker that she had the right to appeal this decision under the regulations specified by ERISA, and that if Tinker had any additional medical evidence not mentioned in the letter, or wished for Continental to reconsider its decision, she should submit a formal request for reconsideration in writing to Continental within 60 days from the date of the letter, June 5, 2003.  AR 106.  The termination

4

letter further advised Tinker that Continental would reconsider its decision upon the receipt of additional evidence, and that if this evidence did not change its decision, Tinker would be informed of this and her claim would be submitted for a formal appeal review.  AR 106.  Finally, the termination letter advised Tinker that "Appeals received later than 60-days may not be considered."  AR 106.

On June 9, 2003, Tinker wrote a letter to Dr. Derebery, copied to Continental, explaining that her condition was much worse than Dr. Derebery had reported to Continental.  AR 90-92. The letter stated that since her appointment with Dr. Derebery on February 12, 2003, "major" vertigo attacks were increasing, moderate attacks were occurring daily, and "instant" attacks were occurring approximately twelve times a day.  AR 90-92.  On June 9, 2003, Tinker also wrote a letter to Continental explaining that there had been a misunderstanding as to the gravity of her current medical condition and that Dr. Derebery would send a corrected letter regarding her condition.  AR 98. On June 18, 2003, during an appointment with Tinker, Dr. Derebery noted in Tinker's chart that her condition had worsened, with vertigo attacks occurring almost daily, lasting one minute to two hours.  AR 95.  On July 17, 2003, Continental received Tinker's appeal seeking reinstatement of her benefits on the basis that she was disabled under the Plan insofar as she

was still experiencing vertigo attacks on a daily basis, which prevent her from performing her job.  AR 85-97.  In support of her appeal, Tinker relied on her June 2003 letters and Dr. Derebery's June 18, 2003 chart notes.  AR 85-86.

On August 27, 2003, Continental faxed a letter to Tinker upholding the decision to deny benefits on the ground that the medical evidence no longer supported a physical or mental impairment preventing her from returning to work.  AR 79. Continental noted that it considered Dr. Derebery's chart notes of June 18, 2003 as well as Tinker's June 2003 letters outlining her symptoms, but found this information to be insufficient to demonstrate that Tinker could not return to her job as previously determined by Dr. Derebery.  AR 79.  Continental stated that it had no information indicating that Tinker was incapable of functioning in her occupation.  AR 79

On December 2, 2003, Dr. Derebery wrote Continental a letter requesting that Tinker's disability benefits be reinstated because she continues to suffer from severe problems and disability from Meniere's disease.  AR 58.  The letter acknowledged that while Tinker did indicate that she experienced some improvement in her symptoms in February 2003, she nonetheless continues to suffer from violent vertigo which has not been adequately controlled with medication.  AR 58. According to Dr. Derebery, Tinker's symptoms "are quite

significant" and have not "appreciably changed from the status she reported to [Dr. Derebery] on September 3, 2002." AR 58. On January 13, 2004, Tinker wrote to Continental requesting reconsideration of its decision to deny benefits in light of Dr. Derebery's December 2, 2003 letter. AR 55. On March 19, 2004, Continental responded by advising Tinker that she had exhausted her administrative remedies and that her only option was to file a civil action. AR CC003-CC004. In October 2006, Tinker's counsel wrote to Hartford Financial Services Group, Inc. ("Hartford") (Continental's successor) requesting that it reopen Tinker's claim given Continental's failure to follow ERISA claims procedure requirements. Chabre Decl., Exh. B. In support of this request, Tinker's counsel enclosed medical records purportedly demonstrating that Tinker has been disabled under the Plan since June 2003. Chabre Decl., Exh. B. On December 4, 2006, Hartford advised Tinker that she had exhausted her administrative remedies and therefore was entitled to file a civil action. AR 12. On December 23, 2006, Tinker filed the instant action. Docket at 1. On April 30, 2008, Tinker filed a motion for judgment under Rule 52. Docket at 41. On May 21, 2008, Defendants filed an opposition and cross-motion for judgment under Rule 52. Docket at 46.

///

///

II. OPINION

A.   <u>Standard of Review</u>

Pursuant to Rule 52 of the Federal Rules of Civil Procedure, each of the parties moves for judgment in its favor on Tinker's ERISA claims.  Under Rule 52, the court conducts what is essentially a bench trial on the record, evaluating the persuasiveness of conflicting testimony and deciding which is more likely true.  <u>Kearney v. Standard Ins. Co.</u>, 175 F.3d 1084, 1094-95 (9th Cir. 1999).

ERISA provides for judicial review of a decision to deny benefits to an ERISA plan beneficiary.  <u>See</u> 29 U.S.C. § 1132(a)(1)(B).  It also creates federal court jurisdiction to hear such a claim.  <u>See</u> 29 U.S.C. § 1132(e).  Review of a decision to deny benefits is *de novo* review unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits; if the plan does grant such discretionary authority, the decision is reviewed for abuse of discretion.  <u>Saffon v. Wells Fargo & Co. Long Term Disability Plan</u>, 522 F.3d 863, 866 (9th Cir. 2008). Here, the relevant language of the Plan provides: "With respect to making benefit decisions, the Plan Administrator has delegated sole discretionary authority to Continental Casualty Company to determine Your eligibility for and entitlement to benefits under the Plan and to interpret the terms and

provisions of any insurance issued in connection with the Plan."
Chabre Decl., Exh. C at 16.  Because the Plan unambiguously
confers discretionary authority upon Continental to administer
the Plan, by granting Continental the power to interpret the
terms and provisions of the Plan and to make final benefit
determinations, the proper standard of review in this case would
normally be abuse of discretion.  See Abatie v. Alta Health &
Life Ins. Co., 458 F.3d 955, 963-64 (9th Cir. 2006) (review of
the denial of benefits is abuse of discretion if a plan grants
the power to construe and interpret the policy and to make final
benefit determinations).[2]  However, as explained below, the Court
finds that a *de novo* review is appropriate as a matter of law in
the instant case because Continental violated the claims
handling procedures of ERISA and the express terms of the Plan.

---

[2] The Court notes that where, as here, a plan administrator
both administers a plan and funds it, an inherent or structural
conflict of interest exists, and the Court must weigh the
conflict as a factor in determining how much or how little to
credit the plan administrator's reason for denying insurance
coverage.  See Abatie, 458 F.3d at 965-69; see also Saffon, 522
F.3d at 868 (observing that a plan administrator labors under a
conflict of interest when it both decides who gets benefits and
pays for them since it has a direct financial incentive to deny
claims).  However, because the Court finds that Tinker is
entitled to *de novo* review, which gives no deference at all to
Continental's decision, the Court need not reach the question of
whether Continental's decision would be entitled to less
deferential review were Tinker entitled to abuse of discretion
review.

In Abatie, the court clarified the standard of review district courts should apply when administrators fail to follow the procedural requirements of ERISA. Abatie, 458 F.3d at 971. There, the court stated that a decision by an administrator to deny benefits under a plan will be reviewed *de novo* when "an administrator engages in wholesale and flagrant violations of the procedural requirements of ERISA, and thus acts in utter disregard of the underlying purpose of the plan." Id. *De novo* review is appropriate where the procedural violations are so flagrant as to alter the substantive relationship between the employer and employee, thereby causing the beneficiary substantive harm. Id. For instance, *de novo* review was appropriate where an administrator kept the policy details secret from the employees, offered them no claims procedure, and did not provide them in writing the relevant plan information. Id. An adverse benefit determination will be reviewed *de novo* when the decision does not fall within an administrator's discretionary authority, such as when a decision is taken in wholesale violation of ERISA procedures. Id. at 971-72. In the present case, the Court finds that *de novo* review is the appropriate standard of review because Continental failed to adhere to the procedural requirements of ERISA and the express terms of the Plan, which prevented full development of the record. A review of the record reveals that Continental did not

provide Tinker a reasonable claims procedure insofar as it failed to comply with ERISA claims procedure requirements, namely the notice and review procedure requirements.  <u>See</u> 29 C.F.R. 2560.503-1(b) (Every plan shall establish and maintain reasonable claims procedures.  A plan's claims procedure will be deemed reasonable only if it complies with, among other things, the requirements of paragraph (f), content of notice requirements, and paragraph (g), review procedure requirements).[3]

First, Continental failed to comply with the notice requirements established by ERISA.  ERISA and its implementing regulations require a plan administrator, once it has decided to deny a claim for benefits, to provide the claimant with "adequate notice in writing . . . setting forth the specific reasons for such denial."  29 U.S.C. § 1133(1).  Specifically, under ERISA regulations, a plan "shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant: (1) The specific reason or reasons for the denial; (2) Specific reference to pertinent plan provisions on which the denial is

_____

[3] The Court refers to the Code of Federal Regulations as of 2001, the year Tinker's claim was filed.  The pertinent regulation, 29 C.F.R. § 2560, first promulgated in 1977, was amended in 2000.  <u>See</u> Pension and Welfare Benefits Administration, 65 Fed.Reg. 70,246 (Nov. 21, 2000).  The alterations apply to claims filed on or after January 1, 2002. 29 C.F.R. § 2560.503-1(o) (2002).

based; (3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review." 29 C.F.R. 2560.503-1(f). Put simply, "what this regulation calls for is a meaningful dialogue between ERISA plan administrators and their beneficiaries. If benefits are denied in whole or in part, the reason for the denial must be stated in reasonably clear language, with specific reference to the plan provisions that form the basis for the denial." Booton v. Lockheed Medical Ben. Plan, 110 F.3d 1461, 1463 (9th Cir. 1997). "The purpose of ERISA's notice requirement is to provide the claimant 'with information necessary for him or her to know what he or she must do to obtain the benefit,' and to 'enable the [claimant] effectively to protest' if a plan persists in its denial of benefits." Boyd v. Aetna Life Ins. Co., 438 F.Supp.2d 1134, 1156 (C.D. Cal. 2006) (citing Juliano v. Health Maint. Org. of New Jersey, Inc., 221 F.3d 279, 287 (2nd Cir. 2000). Here, while Continental's termination letter referenced the relevant Plan provision on which the denial was based and set forth the reason for the denial of benefits, namely that Tinker no longer met the Plan's definition of disability, the letter did not provide a description of any additional material or

information that might be required to perfect Tinker's claim or

explain why such material or information was necessary.  Rather,

the termination letter merely stated that if Tinker had

"additional medical information" not mentioned in the letter or

wished Continental to reconsider its decision then she should

submit a formal request for reconsideration in writing within 60

days.  Continental's clear and flagrant failure to provide a

description of any additional material or information necessary

for Tinker to perfect her claim or an explanation of why such

material was necessary compels this Court to find that

Continental did not comply with ERISA's notice requirements.

See Cheng v. UNUM, 291 F.Supp.2d 717, 720-21 (N.D. Ill. 2003)

(finding that a plan administrator's termination letter failed

to set forth "[a] description of any additional material or

information necessary for the claimant to perfect the claim and

an explanation of why such material is necessary" because it

simply indicated that if the beneficiary had "new, additional

information to support [his] request for disability benefits,"

he should send it to the plan administrator).  Additionally, the

Court finds that Continental failed to comply with ERISA's

notice requirements insofar as it incorrectly advised Tinker

that she had 60 rather than 180 days to appeal the denial of her

claim as required by the Plan and that "Appeals received later

than 60-days may not be considered."  AR 106-107.  As such,

Continental did not provide Tinker the appropriate information as to the steps to be taken to submit her claim for review. Accordingly, because the termination letter did not provide the information necessary for Tinker to know what she must do to obtain benefits or enable her to effectively protest the denial of benefits, the Court concludes that Continental failed to engage in a "meaningful dialogue" with Tinker in violation of ERISA's notice requirements.

Second, the Court finds that Continental failed to comply with the claim review procedures established by ERISA.  Under ERISA regulations, "[e]very plan shall establish and maintain a procedure by which a claimant . . . has a reasonable opportunity to appeal a denied claim to an appropriate named fiduciary . . . and under which a full and fair review of the claim and its denial may be obtained."  29 C.F.R. 2560.503-1(g).  A plan may establish a limited period within which a claimant must file any request for review of a denied claim.

///

///

///

///

///

///

Such time limits must be reasonable and may not expire less than 60 days after receipt by claimant of written notification of denial of a claim.   29 C.F.R. 2560.503-1(g)(3).[4]   Under the express terms of the Plan, Continental was mandated to notify Tinker that she had 180 days to appeal the denial of her claim for benefits.   Thus, because the termination letter stated that Tinker had 60 days to appeal the denial of her claim for benefits, Continental did not satisfy ERISA's "full and fair review" requirement.   Indeed, the Court finds Tinker's argument that had Continental's termination letter notified her of the 180-day appeal deadline, she likely would not have appealed the denial of her claim until she submitted Dr. Derebery's amended letter to be persuasive.

The Court finds the foregoing procedural irregularities to be so substantial as to alter the standard of review from abuse of discretion review to *de novo* review.   Continental's actions fall outside the strictures of ERISA, and therefore it cannot be said that Continental exercised its discretionary authority

---

[4] The new regulation provides that the claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless it provides a claimant at least 180 days following receipt of a notification of an adverse benefit determination within which to appeal the determination.   29 C.F.R. § 2560.503-1(h)(3)(i) (2002).

granted by the Plan.  As such, Continental's decision to deny benefits is not entitled to deference.

District courts may take additional evidence where, as here, "[procedural] irregularities have prevented full development of the administrative record," Abatie, 458 F.3d at 973.  The Court finds that Dr. Dereberry's amended letter dated December 2, 2003, which was not considered by Continental, is significant new evidence that nullifies Continental's basis for terminating Tinker's claim.  This letter will be admitted into evidence as part of the administrative record in this case and no deference will be given to Continental's decision to deny benefits to Tinker.  Id.; see also Saffon, 522 F.3d at 874 (If new significant evidence will be presented in the district court, it may be impossible for the court to grant any deference to the decision of the claims administrator, as that decision will perforce have been made without taking into account the new evidence.  As a practical matter, therefore, it may be unnecessary for the district court to determine the degree of deference to the decision of the claims administrator, as the admission of significant new evidence will require a de novo reconsideration of the decision in any event.).

Accordingly, the Court finds that Continental's decision to deny benefits requires de novo review, including a determination of whether Tinker is disabled.  See Saffon, 522 F.3d at 874 n. 6

(where procedural irregularities have prevented full development of the administrative record, the district court may hear additional evidence and decide the issue of whether a claimant is disabled).

For these reasons, the Court will apply a *de novo* standard of review to Continental's decision to deny benefits.

B.    Denial of Disability Benefits

Applying the *de novo* standard of review, the issue before the Court is whether Continental improperly terminated Tinker's benefits.  Abatie, 458 F.3d at 963.  In this regard, the Court finds that Continental improperly terminated Tinker's benefits, and that Tinker is entitled to a retroactive reinstatement of benefits as a result of Meniere's disease.

A review of the record in this case reveals that Tinker was disabled when Continental terminated her benefits.  Although Dr. Derebery advised Continental in April 2003 that Tinker's vertigo attacks had decreased in severity and frequency since September 2001, and that, as of May 30, 2003, Tinker was capable of performing the duties described in the Functional Assessment Tool, such as sitting with the option of standing as needed, the ability to operate a computer, telephone, fax machine, or practice analytic thinking skills, there is no evidence in the record indicating that Tinker could continuously perform the material and substantial duties of her job as required by the

Plan.  Even assuming that Tinker could perform the duties described in the Functional Assessment Tool, this finding is not equivalent to a finding that Tinker could continuously perform the material and substantial duties of her job.  In fact, contrary to Continental's assertion, Continental had information indicating that Tinker was not capable of continuously performing the material and substantial duties of her job at the time it terminated her benefits.  Specifically, the record indicates that as of February 12, 2003, Tinker was suffering from severe vertigo attacks once every 3-4 weeks and moderate attacks 1-2 times per week.  The record further indicates that as of June 18, 2003, Tinker's condition had worsened, with vertigo attacks occurring almost daily, lasting one minute to two hours.  Finally, the record indicates that, according to Tinker, she was unable to return to work as of June 30, 2003 because she was suffering from frequent vertigo attacks.[5]  Based

---

[5] Continental's choice to stick its head in the sand and ignore this evidence strongly implies that its claim procedure was unfair and self serving.  Even though ERISA claim regulations requiring consultation with a healthcare professional by the claim fiduciary did not technically apply to Tinker's case, Continental should have further investigated Tinker's condition upon receiving information inconsistent with Dr. Derebery's answer to the Functional Assessment Tool, such as Dr. Derebery's June 18, 2003 chart notes indicating that Tinker's condition had worsened with vertigo attacks occurring on almost a daily basis and Tinker's June 2003 letters stating that she was suffering from frequent vertigo attacks.

on this evidence, the Court concludes that Continental improperly terminated Tinker's benefits on May 31, 2003 because Tinker was unable to continuously perform the material and substantial duties of her job as required by the Plan.  This conclusion is fully supported by Dr. Derebery's letter dated December 2, 2003, requesting Continental to reinstate Tinker's benefits because Tinker continues to suffer from severe problems and disability from Meniere's disease.  Dr. Derebery's letter unequivocally stated that Tinker suffers from violent vertigo which has not been adequately controlled with medication.  Thus, viewed in its entirety, the evidence supports no other conclusion except that Tinker was incapable of returning to work and continuously performing the material and substantial duties of her job and Continental improperly terminated Tinker's benefits on May 31, 2003.

Because the Court finds that the undisputed facts conclusively establish that Tinker was disabled under the Plan when her benefits were terminated, retroactive reinstatement of benefits is appropriate.  See Grosz-Salomon v. Paul Revere Life Ins. Co., 237 F.3d 1154, 1163 (9th Cir. 2001) (a retroactive reinstatement of benefits is appropriate in ERISA cases where but for the insurer's arbitrary and capricious conduct, the insured would have continued to receive the benefits or where there was no evidence in the record to support a termination or

denial of benefits).  Here, but for Continental's arbitrary and capricious conduct, Tinker would have continued to receive benefits under the Plan.  A review of the record reveals that the denial of benefits was erroneous.  Tinker's claim for benefits was supported by a preponderance of the evidence and therefore Continental's decision was unreasonable.  As such, retroactive reinstatement of benefits is appropriate.  See id. ("A remand of an ERISA action seeking benefits is inappropriate where the difficulty is not that the administrative record was incomplete but that a denial of benefits based on the record was unreasonable.").

In reaching this conclusion, the Court is mindful that it could remand the case to the plan administrator for a renewed evaluation of Tinker's case.  Cook v. Liberty Life Assurance Co. of Boston, 320 F.3d 11, 24 (1st Cir. 2003) ("Once a court finds that an administrator has acted arbitrarily and capriciously in denying a claim for benefits, the court can either remand the case to the administrator for a renewed evaluation of the claimant's case, or it can award a retroactive reinstatement of benefits.").  This is particularly so given that but for Continental's improper termination of benefits, Tinker would have received benefits under the Plan through August 28, 2003 pursuant to the Plan's 24-month limitation for a physical or mental impairment that prevents a claimant for continuously

performing the material and substantial duties of their job.  At that time, Tinker would have to satisfy a more stringent definition of disability in order to continue receiving benefits.  In particular, Tinker would have to show that she had a physical or mental impairment that prevented her from engaging in any occupation for which she became qualified by education, training or experience.[6]  Under similar circumstances, remand for further proceedings has been found proper where the record lacked sufficient evidence to determine whether the claimant was disabled under the more stringent definition of disability.  <u>See</u> <u>Volynskaya v. Epicentric, Inc.</u>, 2008 WL 495708, *1-2 (N.D. Cal. 2008).

The record in this case contains sufficient evidence to support the Court's conclusion that Tinker was disabled under the more stringent definition of disability and therefore no remand is necessary or required.  This evidence includes

---

[6] The Plan provides in relevant part:

After the *Monthly Benefit* has been payable for 24 months, "*Disability*" means that *Injury or Sickness* causes physical or mental impairment to such a degree of severity that You are:
1. continuously unable to engage in any occupation for which *You* are or become qualified by education, training or experience; and
2. not working for wages in any occupation for which *You* are or become qualified by education, training or experience.

Chabre Decl., Exh. C at 5 (italics in original).

Tinker's June 9, 2003 letter, AR 90-92; Dr. Derebery's notes in Tinker's medical chart from the June 18, 2003 appointment, AR 95; Tinker's July 17, 2003 appeal, AR 85-97; and, most significantly, Dr. Derebery's December 2, 2003 letter requesting reinstatement of Tinker's disability benefits, AR 58. Accordingly, remand is not the appropriate remedy in this case because Continental's termination of benefits was clearly contrary to the facts.  Grosz-Solomon, 237 F.3d at 1163 ("[A] plan administrator will not get a second bite at the apple when its first decision was simply contrary to the facts.").

The Court finds that remand would result in further delay and add to the injustice already suffered by Tinker.  Tinker should not be required to endure additional hardship and difficulties in obtaining proof of disability for a period beginning more than five years distant because Continental acted unreasonably.  The Court declines to allow Continental to profit from its wrongdoing.

For these reasons, the Court concludes that retroactive reinstatement, not remand, is appropriate.  Continental is directed to reinstate Tinker to the Plan and treat her as if she has been disabled due to Meniere's disease under the Plan from June 30, 2003 to the present date.

///

///

### III. ORDER

For the reasons set forth above, Tinker's motion is GRANTED and Continental's motion is DENIED.  Continental is directed to immediately reinstate Tinker's monthly disability benefits retroactive to June 30, 2003, with interest.  Tinker may also be entitled to an award of reasonable attorney's fees and costs. See 29 U.S.C. § 1132(g).  The Court will entertain a separate motion for attorney's fees and costs.

IT IS SO ORDERED.

Dated:  July 13, 2008

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE